F. J. ANDERS, Ex'r, v. J. W. ELLIS, Adm'r.

*Damages for Breach of Contract—Evidence.*

In a suit for damages for breach of a contract entered into in 1860, in which the party covenanted to buy a slave to be worth not less than $900, and to be held in trust for another, and no proof was offered on the question of damages other than that contained in the covenant; *Held*, no error to instruct the jury to give only nominal damages. The words "to be worth not less than $900" are used as descriptive of the property and not the sum to be laid out in its purchase.

(*Harrell* v. *Watson*, 63 N. C. 454, cited and approved.)

CIVIL ACTION tried at Spring Term, 1882, of BLADEN Superior Court, before *Shipp, J.*

The testatrix of the plaintiff and the intestate of the defendant on January 17th, 1860, and just previous to the solemnization of their contemplated marriage, executed a deed of marriage settlement, to which one Samuel Anders was also a party, whereby certain slaves, household furniture and notes belonging to the testatrix were conveyed to the latter for her separate use, and upon the specific trusts therein mentioned. The deed contains the following provision:

"And the said Hulin G. Barnhill for the above consideration covenants and agrees to and with the said Samuel Anders and Catherine A. Anders, that he will within four years from the consummation of the aforesaid marriage, purchase or cause to be conveyed to the said trustee, Samuel Anders, a negro woman to be worth not less than nine hundred dollars, to be held in trust for the said Catherine A. under the same restrictions as the negroes hereinbefore conveyed."

The present action is instituted to recover for a breach of said covenant, in the failure of the intestate to purchase or procure such slave during the period mentioned, or after-

wards during his life, and the plaintiff demands judgment for the sum of nine hundred dollars and interest from the 17th day of January, 1864, and also asks for general relief.

Upon the trial the plaintiff introduced the marriage settlement and read it to the jury. Both parties offered testimony, but none was made on the question of damages, other than what is contained in the said deed.

The court thereupon remarked that in the absence of evidence to ascertain the damages, the jury would be instructed to give nominal damages only. The plaintiff insisted on his right to recover the sum demanded in his complaint, suffered a non-suit and from the judgment appeals to this court, and the only inquiry is into the correctness of this ruling.

*Mr. C. C. Lyon*, for plaintiff.
*Messrs. N. A. Stedman* and *T. H. Sutton*, for defendant.

SMITH, C. J., after stating the case. It is properly conceded, and such is the frame of the complaint, that the intestate had the entire four years ensuing the marriage in which to fulfill his stipulation to procure and put such slave under the trusts of the deed, and that his covenant was broken by his failure to do so at the expiration of that time.

We interpret the contract to mean that a slave woman of such condition and quality as would be worth the sum specified, at the time when it was entered into, should be obtained and settled to the separate use of the wife, and that if one of this description, at whatever price obtained, had been placed under the said trusts, within the time limited, the obligation assumed would have been met.

The words " to be worth not less than nine hundred dollars " are used as descriptive of the female slave to be purchased, and not of the sum to be laid out in the purchase. Thus understood, if slavery had ceased to exist before the

lapse of the period allowed, it would have operated as a discharge, since no one can be required to do an illegal act or be liable in damages for not doing it. So if by the approach of that inevitable event, this form of property had become so reduced in value as to be almost worthless, the compensation would be measurable by the value of what, if furnished, would have been a compliance with the terms of the contract and which the testatrix has lost.

Slavery was not in fact abolished on January 1st, 1863, by the president's proclamation, but in the exercise of a war power the slaves themselves were set free as the territory wherein they were found came under the control of the advancing armies of the United States. *Harrell* v. *Watson*, 63 N. C., 454. But the tenure by which this species of property was held became, in the progress of events, weakened, and its value greatly impaired; and to what extent was a matter to be left to the jury in estimating the damages sustained? What is the extent of the injury to the testatrix?

Had the slave been obtained, the property therein would have speedily perished, and in the light of an equitable proceeding, the damage would have been the loss of services for a brief period only. But whatever rule of estimating damages he adopted, it is plain they must be assessed by a jury upon evidence, and without evidence, only nominal can be recovered.

There is no error, and the judgment must be affirmed.

No error.                                    Affirmed.